```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
```
Senate Rivera,

                       Petitioner,                        **MEMORANDUM & ORDER**
                                                                                              23-CV-07418 (DG)

       -against-

Ms. M. Kopp, *Acting Superintendent*,

                       Respondent.
```
----------------------------------------------------------------X
```
DIANE GUJARATI, United States District Judge:

      By Petition filed September 16, 2023, *pro se* Petitioner Senate Rivera, incarcerated at Sing Sing Correctional Facility, commenced this action pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York, challenging his 2018 conviction in the Supreme Court of the State of New York, County of Richmond (the "Richmond County Supreme Court") of criminal sale of a controlled substance in the first degree and criminal possession of a weapon in the second degree upon his plea of guilty. *See* ECF No. 1.[1] The action subsequently was transferred to the United States District Court for the Eastern District of New York. *See* ECF No. 2; *see generally* docket.

      On April 20, 2024, Petitioner filed the operative Amended Petition. *See* Amended Petition ("Am. Pet."), ECF No. 10.[2] The Court liberally construes the Amended Petition in light of Petitioner's *pro se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In summary,

---

[1] Under the "prison mailbox rule," the operative filing date is the date on which the petition was delivered to prison officials for forwarding to the court. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001). Here, Petitioner declares that he delivered the Petition to prison authorities on September 16, 2023. *See* ECF No. 1 at 16. The Petition was timely filed and Respondent does not argue otherwise.

[2] The filing of the Amended Petition followed the grant of Respondent's Motion for More Definite Statement. *See* March 27, 2024 Order (granting motion); ECF No. 9 (motion).

1

Petitioner asserts that evidence recovered during the execution of warrants to search two apartments should have been suppressed – *i.e.*, that his Fourth Amendment rights have been violated. *See generally* Am. Pet.

For the reasons set forth below, the Amended Petition is DENIED.

## BACKGROUND

I.  **State Proceedings**[3]

   A.  **Searches, Arrest, and Indictment**[4]

In April 2018, the police obtained three search warrants – for the Basement Apartment at 50 Caroline Street, Staten Island ("50 Caroline Street"), for the Rear Door Apartment at 50 Caroline Street, and for the person of Petitioner, respectively. Upon execution of the warrants at the two apartments, numerous items were recovered, including a gun, ammunition, drugs, and drug paraphernalia. Petitioner thereafter was arrested and charged in a 48-Count Indictment. Among the charges contained in the Indictment were criminal sale of a controlled substance in the first degree (Count One) and criminal possession of a weapon in the second degree (Count Twenty-Six).[5]

   B.  **Pretrial Motion**

In July 2018, Petitioner – at the time represented by counsel – filed an Omnibus Motion

---

[3]  Familiarity with the procedural history and background with respect to the state court proceedings and with the entirety of the State Court Record ("S.R."), ECF Nos. 13-2, 13-3, and 13-4, is assumed herein.

[4]  The information contained in this section is uncontested and is taken from the State Court Record and the decision of the state court on Petitioner's appeal, which decision is discussed further below.

[5]  The Court takes judicial notice of the Indictment, *People v. Rivera*, Indictment No. 194/2018, (N.Y. Sup. Ct.), and the attached Information.

2

that, as relevant here, included a Motion to Controvert the Search Warrants and Suppress Property (the "Motion to Controvert and Suppress"). *See* S.R. 45, 54-57. In the Motion to Controvert and Suppress, Petitioner sought, *inter alia*, suppression of property recovered from the two apartments at 50 Caroline Street, principally arguing that the warrants at issue were overbroad and insufficiently particular, in violation of Petitioner's rights under the New York State Constitution and the Fourth Amendment to the United States Constitution.

The People filed an Affirmation in response to the Omnibus Motion. *See* S.R. 62-71. In the Affirmation, the People opposed the Motion to Controvert and Suppress, principally arguing that the warrants at issue were neither overbroad nor insufficiently particular.

By Decision and Order dated August 24, 2018, Justice Stephen J. Rooney of the Richmond County Supreme Court denied the Motion to Controvert and Suppress, having determined, *inter alia*, that "there was probable cause for the issuance of the search warrant;" that "the warrant described the premises to be searched with sufficient particularity and it was not overbroad;" and that Petitioner "provide[d] an insufficient factual basis" to obtain a *Franks* hearing. *See* S.R. 42-44.[6]

### C. Guilty Plea and Sentencing

On November 30, 2018, Petitioner entered a plea of guilty to Counts One and Twenty-Six of the Indictment. *See* S.R. 93-107. In connection with his guilty plea, Petitioner signed a Waiver of the Right to Appeal form. *See* S.R. 85.

On December 17, 2018, Petitioner was sentenced on Count One to twelve years of incarceration and five years of post-release supervision and was sentenced on Count Twenty-Six

---

[6] Although there are references in the record to "warrant" in the singular, it is uncontested that three warrants (supported by one affidavit) were issued. *See* S.R. 73-84.

to five years of incarceration and five years of post-release supervision, with the sentences to run concurrently.  *See* S.R. 108-12.

  **D.**  **Appeal**

On January 14, 2022, Petitioner – at the time still represented by counsel – appealed the judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Department (the "Appellate Division").  *See* S.R. 1-38.  Petitioner raised one principal argument on appeal: that "the evidence recovered during the execution of warrants to search two separate apartments, including Appellant's home, must be suppressed because (a) the warrant application did not allege that any illegal activity was connected to the rear-door apartment; and (b) the no-knock provisions in the warrants were impermissibly based on the potential presence of drugs in a building that had plumbing and windows."  *See* S.R. 2, 16-38.  More specifically, Petitioner argued (1) that the warrant application did not establish probable cause to search the Rear Door Apartment and therefore, the evidence seized from that apartment – a gun, ammunition, heroin, paraphernalia, mail, cellphones, and money – should be suppressed, Petitioner's conviction reversed, and certain Counts of the Indictment dismissed; and (2) that the warrant application did not establish reasonable cause that property sought could be quickly and easily disposed of and therefore, there was not a sufficient basis to justify an exception to the knock-and-announce rule and all of the evidence obtained as a result of the no-knock warrants should be suppressed, Petitioner's conviction reversed, and certain Counts of the Indictment dismissed.

Petitioner also argued that his claims "were preserved for review by counsel's motion to controvert the search warrant, in which he argued that all evidence seized under the warrants must be suppressed as obtained in violation of appellant's state and federal constitutional rights"

and "were further preserved by the court's express ruling that the warrant was supported by probable cause for both locations" and that to the extent that the court found his challenge based on the knock-and-announce rule unpreserved, the court should reach that claim in the interest of justice. *See* S.R. 33-34. Petitioner asserted that his waiver of appeal was invalid. *See* S.R. 34.

The People opposed Petitioner's appeal. *See generally* S.R. 113-44. The People raised two principal arguments in opposition to the appeal: (1) that a neutral magistrate properly granted a search warrant of property associated with Petitioner based on the probable cause presented in the search warrant affidavit; and (2) that a neutral magistrate properly granted the no-knock provision of the search warrant after finding reasonable cause present in the affidavit. Further, the People asserted that Petitioner's challenge to the adequacy of the probable cause showing was both unpreserved and meritless and that Petitioner's challenge to the no-knock provision also was both unpreserved and meritless. The People did not seek enforcement of the waiver of the right to appeal.

By decision dated November 9, 2022, the Appellate Division affirmed Petitioner's judgment of conviction. *See People v. Rivera*, 178 N.Y.S.3d 169 (2d Dep't 2022). The Appellate Division stated as an initial matter that "contrary to the People's contention, the defendant's contention that one of the warrants was not supported by probable cause is preserved for appellate review" because "[a]lthough the defendant did not raise any arguments related to whether the search warrant was supported by probable cause in his motion, inter alia, to controvert the search warrants and suppress the evidence seized in the execution thereof, the Supreme Court expressly decided the issue of whether the warrant was supported by probable cause." *See id*. at 170-71 (quotation omitted). The Appellate Division went on to state that "[c]ontrary to the defendant's contention, the Supreme Court properly denied those branches of

5

his motion which were to controvert search warrants and suppress the evidence seized in the execution thereof" because "[h]ere, there was probable cause to issue the subject search warrants." *See id.* at 171.  The Appellate Division further stated that "[t]he defendant's contention that the Supreme Court erred in upholding the provision in the search warrants permitting the police officers to enter the subject location without announcing their presence is unpreserved for appellate review" and the Appellate Division "decline[d] to reach the issue in the exercise of [the Appellate Division's] interest of justice jurisdiction." *See id*.

By letter dated November 30, 2022, Petitioner – at the time still represented by counsel – sought leave to appeal to the New York State Court of Appeals (the "Court of Appeals") from the Appellate Division's November 9, 2022 decision.  *See* S.R. 168-69.  Petitioner thereafter submitted a supplemental letter in support of his request for leave.  *See* S.R. 170-76.  Petitioner argued, *inter alia*, that his case presented the Court of Appeals with "the opportunity to explain if probable cause to search a residence can be established by probable cause to search a separate apartment in the building, solely because they share an owner and entryway" and stated that the Appellate Division concluded that "this issue was preserved by the suppression court's specific ruling on the issue in response to defense counsel's omnibus motion." *See* S.R. 170, 175.  Petitioner stated that he was seeking leave to appeal "on this issue, as well as on all state and federal constitutional issues raised in his appeal to the Appellate Division."  *See* S.R. 175.

By letter dated January 10, 2023, the People opposed Petitioner's application for leave to appeal the Appellate Division's November 9, 2022 decision, arguing that the claim Petitioner sought to raise was unpreserved and, in any event, unworthy of review.  *See* S.R. 177-78.

By Order dated June 30, 2023, the Court of Appeals denied Petitioner's application for leave to appeal.  *See* S.R. 179.

6

## II.  The Amended Petition and Opposition

In the Amended Petition, Petitioner asserts that evidence obtained from the searches of the two apartments at 50 Caroline Street must be suppressed.  *See generally* Am. Pet.  More specifically, Petitioner argues (1) that the evidence recovered from the Rear Door Apartment must be suppressed because the warrant application "did not allege that any illegal activity was connected to [that apartment];" and (2) that the no-knock provision in the warrant for each of the apartments was "impermissibly based on the potential presence of drugs in a building that had plumbing and windows."  *See* Am. Pet. at 3.  Although the Amended Petition does not expressly reference the Fourth Amendment to the United States Constitution, the Amended Petition is grounded in the Fourth Amendment.  *See generally* Am. Pet.

Respondent opposes the Amended Petition.  *See* Memorandum of Law in Opposition to the Amended Petition for a Writ of Habeas Corpus ("Resp. Br."), ECF No. 13-1; *see also* Declaration in Opposition to the Amended Petition for a Writ of Habeas Corpus, ECF No. 13. Respondent argues that "Petitioner's Fourth Amendment claim fails" because "[t]he no knock claim is procedurally barred by an adequate and independent state law ground" and "both claims are barred under *Stone v. Powell*, 428 U.S. 465, 494 (1976)."  *See* Resp. Br. at 2.  With respect to the no-knock claim, Respondent argues, more specifically, that such claim is procedurally barred because the Appellate Division found the claim to be unpreserved for appellate review and the claim "is therefore decided at the state level on independent and adequate state procedural grounds" and, furthermore, Petitioner "has not demonstrated cause for the default, prejudice, or a miscarriage of justice."  *See* Resp. Br. at 2-3.  With respect to the asserted *Stone* bar, Respondent argues, more specifically, that Petitioner "has fully litigated his Fourth Amendment suppression claims in state court."  *See* Resp. Br. at 4-6 (referencing Petitioner's Omnibus Motion, the

7

Richmond County Supreme Court's August 24, 2018 Decision and Order, and Petitioner's direct appeal and arguing that the record reveals that at every stage of the state proceedings, Petitioner was afforded an ample opportunity to vindicate his Fourth Amendment rights in the state courts).

## FEDERAL REVIEW OF STATE CONVICTIONS

To determine whether a petitioner is entitled to a writ of habeas corpus, a district court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

Pursuant to 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a).

In order to obtain relief pursuant to 28 U.S.C. § 2254, a petitioner generally must first exhaust his state remedies by fairly presenting his constitutional claims to the state courts. *See* 28 U.S.C. § 2254(b)(1) (providing: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (noting that exhaustion "requires that the prisoner fairly present his constitutional claim to the state courts, which he accomplishes by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it" (quotations omitted)).

"Moreover, 'federal courts will not review questions of federal law presented in a habeas

8

petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Sutton v. Royce*, No. 20-CV-02844, 2024 WL 1073150, at *6 (E.D.N.Y. Mar. 12, 2024) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). "[I]f the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is 'adequate to support the judgment.'" *Id*. (quoting *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007)).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Georgison v. Donelli*, 588 F.3d 145, 153 (2d Cir. 2009) (quotation omitted); *see also York v. King*, No. 24-CV-02449, 2025 WL 1566414, at *4 (E.D.N.Y. June 3, 2025) (discussing procedural default).

Where a petitioner's claim was adjudicated on the merits in state court, the state court's decision is entitled to deference under AEDPA. *See* 28 U.S.C. § 2254(d) (providing: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."); *Englert v. Lowerre*, 115 F.4th 69, 80 (2d Cir. 2024) (discussing 28 U.S.C. § 2254(d) and noting that standard of review is highly deferential and difficult to meet), *cert. denied sub nom. Englert v. Bishop*, 145 S. Ct. 2826 (2025); *see also Woods v. Donald*, 575

9

U.S. 312, 316 (2015) (noting that AEDPA's standard is intentionally difficult to meet).

With respect to claims under the Fourth Amendment, the United States Court of Appeals for the Second Circuit has stated that *Stone v. Powell* "imposes a prudential limitation on a petitioner's ability to obtain habeas relief on the ground that the state court declined to suppress evidence obtained in an unlawful search" and that "*Stone* applies irrespective of the merits of the underlying Fourth Amendment claim." *See Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022); *see also Stone v. Powell*, 428 U.S. 465, 494 (1976). "[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). A petitioner may, however, obtain habeas relief "if he shows that the state denied him an opportunity for full and fair litigation of his Fourth Amendment claim." *See Ethridge*, 49 F.4th at 684 (citing *Stone*, 428 U.S. at 494 n.37). "To do so, a petitioner must establish either that 'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Id*. (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)); *see also Sutton*, 2024 WL 1073150, at *7. A petitioner's failure to raise and preserve a claim in state court does not equate to the denial of an *opportunity* for full and fair litigation of the claim. *See, e.g.*, *Blocker v. Graham*, No. 17-CV-06648, 2022 WL 309952, at *15 (W.D.N.Y. Feb. 2, 2022).

"The Second Circuit has long held that New York's procedure for litigating Fourth Amendment claims is facially adequate." *Sutton*, 2024 WL 1073150, at *7; *see also Capellan*, 975 F.2d at 70 n.1 (noting that "the federal courts have approved New York's procedure for

10

litigating Fourth Amendment claims . . . as being facially adequate" and collecting cases (quotation omitted)). "Therefore, because New York has provided a 'corrective mechanism,' [a petitioner] may only obtain habeas relief if he can establish that he was 'precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Sutton*, 2024 WL 1073150, at *7 (quoting *Ethridge*, 49 F.4th at 684). "To establish such a breakdown, the petitioner would have to prove that the state system failed to conduct a reasoned method of inquiry into relevant questions of fact and law," which is a "stringent standard." *See id.* (quotations omitted); *see also Love v. Superintendent of Otisville Corr. Facility*, No. 16-CV-02937, 2017 WL 4233011, at *6 (E.D.N.Y. Sept. 22, 2017) (noting that in *Capellan*, the Second Circuit gave a few examples of the sort of disruption or obstruction of a state proceeding typifying an unconscionable breakdown – including if the trial court yielded to mob intimidation of the jury – and distinguishing those examples); *Ramos v. Goodman*, No. 23-CV-04762, 2024 WL 4354863, at *10 (S.D.N.Y. Sept. 27, 2024) (noting that a "'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process'" and that an "unconscionable breakdown in the underlying process occurs when 'the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law'" (quoting *Capellan*, 975 F.2d at 72, 70); stating that "[e]xamples of unconscionable breakdowns in the underlying procedure include, but are not limited to, the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review" (quotation omitted); and distinguishing those examples).

## DISCUSSION

The record reflects that the State provided an opportunity for full and fair litigation of

11

Petitioner's Fourth Amendment claims and therefore Petitioner may not be granted habeas relief on the grounds raised in the Amended Petition. *See Stone*, 428 U.S. at 494.

As an initial matter, Petitioner does not appear to argue that New York "has provided no corrective procedures at all" to redress the alleged Fourth Amendment violations, nor would any such argument be supported by the applicable law as set forth above, *see Capellan*, 975 F.2d at 70 n.1; *Sutton*, 2024 WL 1073150, at *7, or by the record here, which reflects the existence of corrective procedures.

Because New York has provided a corrective mechanism, Petitioner may only obtain habeas relief if he can establish that he "was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *See Ethridge*, 49 F.4th at 684 (quotation omitted); *see also Sutton*, 2024 WL 1073150, at *7. Petitioner has failed to do so here. To the contrary, the record reflects that Petitioner had available to him procedures to allow him to be heard on his Fourth Amendment claims fully and fairly and the record reflects that Petitioner in fact availed himself of various procedures that allowed him to be heard.

As set forth above, Petitioner, who was represented by counsel in state court, *inter alia*: (1) filed the Motion to Controvert and Suppress; (2) received a decision on the Motion to Controvert and Suppress; (3) filed an appeal of the judgment of conviction, raising issues relevant to his Fourth Amendment claims; (4) received a decision from the Appellate Division with respect to his appeal; (5) sought leave to appeal to the Court of Appeals, raising issues relevant to his Fourth Amendment claims; and (6) received a decision from the Court of Appeals on his request for leave.

Petitioner's disagreement with the rulings in state court does not establish any unconscionable breakdown. *See Capellan*, 975 F.2d at 72; *Sutton*, 2024 WL 1073150, at *7-8.

The Amended Petition, ECF No. 10, is denied.[7]

## CONCLUSION

For the reasons set forth above, the Amended Petition, ECF No. 10, is DENIED.

The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner, however, has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment, close this case, and mail a copy of this Order to Petitioner.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: January 2, 2026
Brooklyn, New York

---

[7] As Respondent argues, even setting aside the *Stone* bar, New York's preservation rule would constitute an adequate and independent state law ground barring federal habeas review as to Petitioner's no-knock claim, which the Appellate Division found unpreserved. *See* Resp. Br. at 2-3 (citing, *inter alia*, *McPherson v. Keyser*, No. 20-161-pr, 2021 WL 4452078 (2d Cir. Sept. 29, 2021) and *Garvey v. Duncan*, 485 F.3d 709 (2d Cir. 2007) and asserting that Petitioner has not demonstrated cause for his default, prejudice, or a miscarriage of justice).